**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

MATTHEW WILHELM, an Ohio citizen,   )
individually and as a representative of a class   )
of similarly-situated persons,   )
   )
        Plaintiff,   )
   )  Case No.:  1:24-cv-00506
     v.   )
   )  Honorable Brigid Meehan Brennan
ZENLEADS, INC. d/b/a Apollo.io, a   )
Delaware corporation,   )  Class Action
   )
        Defendant.   )

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENT AND OTHER RELIEF**

Brian J. Wanca
Ryan M. Kelly
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL  60008
Tele: 847-368-1500 / Fax: 847-368-1501
bwanca@andersonwanca.com
rkelly@andersonwanca.com

## TABLE OF CONTENTS

**Page**

Table of Contents ................................................................................................. i

Table of Authorities ............................................................................................ ii

Statement of Issues Presented ........................................................................ viii

Concise Statement of Reasons to Grant Motion ............................................. viii

Argument ..............................................................................................................1

I.  Introduction ..................................................................................................1

II.  Factual and Procedural Background ...........................................................3

    A. Plaintiff's Complaint against Zenleads. ................................................3

    B.  Litigation, Negotiations, and Settlement ..............................................5

III.  Terms of the Settlement Agreement ...........................................................6

    A.  Class Definition ......................................................................................7

    B.  Settlement Payments ..............................................................................7

    C.  Prospective Relief ...................................................................................8

    D.  Payment of Settlement Notice and Administrative Costs .....................8

    E.  Payment of Attorneys' Fees, Costs, and Incentive Award ...................8

    F.  Release of Liability .................................................................................9

IV.  The Court Should Preliminary Approve the Settlement; Certify the
Settlement Class; Appoint the Proposed Class Representative, Class
Counsel, and Class Administrator; Approve of the Proposed Notice; and Adopt the
Proposed Schedule Leading up to the Fairness Hearing ............................................9

    A.  The Proposed Settlement Satisfies the Standard for Preliminary Approval. .......10

        1. The Proposed Settlement was reached after serious, informed,
and arm's-length negotiations ..............................................................................10

        2. The Proposed Settlement Has No Obvious Deficiencies ...................................1

i

3. The Proposed Settlement falls within the range
of possible approval ...................................................................................13

B. Certification of the Settlement Class is Appropriate ...........................................15

1. The Settlement Class is ascertainable..............................................................16

2. Numerosity ........................................................................................................16

3. Commonality......................................................................................................17

4. Typicality ..........................................................................................................18

5. Adequacy of Representation .............................................................................18

6. Certification under Rule 23(b)(2) is appropriate .............................................19

7. Certification under Rule 23(b)(3) is appropriate .............................................20

C. The Court should appoint the proposed Class Representative,
Class Counsel, and Class Action Administrator ................................................22

D. The proposed form and manner of notice is reasonable and
should be approved ............................................................................................23

E. The Court Should Provide a Schedule Leading Up to
the Fairness Hearing .........................................................................................25

Conclusion ......................................................................................................................26

# TABLE OF AUTHORITIES

## CASES                                                               Pages(s)

*Amchem Prods. v. Windsor*,
   521 U.S 591 (1997) ..........................................................................15, 19, 20, 22

*Amos v. PPG Industries, Inc.*,
   2015 WL 4881459 (S.D. Ohio Aug. 13, 2015) ...................................12

*Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   105 F.R.D. 506 (S.D. Ohio 1985) ......................................................17

*Brotherton v. Cleveland*,
   141 F. Supp. 2d 894 (S.D. Ohio 2001) ..............................................11

*Butler v. Whitepages, Inc.*,
   No. 1:19-cv-04871 (N.D. Ill. Sept. 29, 2022) ............................5, 6, 15

*Charisma Hudson and Brian Schaefer v. Datanyze, LLC*,
   3:23-cv-00466 (N.D. Ohio) ................................................................19

*Chesher v. Neyer*,
   215 F.R.D. 544 (S.D. Ohio 2003) ......................................................18

*Coulter-Owens v. Rodale, Inc.*,
   No. 14-cv-12688 (E.D. Mich. Sept. 29, 2016) ..................................15

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ..........................................................................23

*Fidel v. Farley*,
   534 F.3d 508 (6th Cir. 2008) .............................................................23

*Fraley v. Batman*,
   638 F. App'x 594 (9th Cir. 2016) ......................................................14

*Fraley v. Facebook, Inc.*,
   966 F. Supp. 2d 939 (N.D. Cal. 2013) ..............................................14

*Frank v. Gaos*,
   139 S. Ct. 1041 (2019) ......................................................................14

## TABLE OF AUTHORITIES

**CASES**                                                                                                    **Page(s)**

*Franks v. Kroger Co.*,
   649 F. 2d 1216 (6th Cir. 1981) ............................................................................ viii, 10

*Frost v. Household Realty Corp.*,
   61 F. Supp. 3d 740 (S.D. Ohio 2004) ..................................................................25

*Fischer v. Instant Checkmate LLC*,
   No. 1:19-cv-04892 (N.D. Ill. Feb. 15, 2024) ...........................................5, 6, 15

*Gooch v. Life Investors Ins. Co. of Am.*,
   672 F. 3d 402 (6th Cir. 2012) ..............................................................................19

*Halaburda v. Bauer Publ'g Co., LP*,
   No. 12-cv-12831 (E.D. Mich. Jan. 6, 2015) ................................................. 14-15

*Hartz v. Zenleads Inc. d/b/a Apollo.io*,
   2023 CH 5114 (Ill. Ct.) ..................................................................................... 1-2

*In re Am. Med. Sys. Inc.*,
   75 F.3d 1069 (6th Cir. 1996) ..........................................................................17, 20

*In re Cincinnati Gas & Elec. Co. Sec. Litig.*,
   643 F. Supp. 148, 150 (S.D. Ohio 1986) .............................................................12

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
   No. 3:08-MD-01998 (W.D. Ky. Dec. 22, 2009)............................................20, 23

*In re Google Buzz Priv. Litig.*,
   No. C 10-00672 JW (N.D. Cal. June 2, 2011) ....................................................14

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
   204 F.R.D. 330 (N.D. Ohio 2001) .......................................................................10

*In re Polyurethane Foam Antitrust Litigation*,
   2012 WL 12868246 (N.D. Ohio Jan. 23, 2012)..................................................11

*In re WhirlpoolCorp. Front-Loading Washer Prods. Liab. Litig.*,
   722 F.3d 838 (6th Cir. 2013) ..............................................................................20

iv

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Ira Holtzman v. Zenleads, Inc.*,
2023 CH 05114 (Cir. Ct. Cook County, Ill.) ..........................................................................19

*James Bellanca v Zenleads Inc. d/b/a Apollo.io*,
No. 1:23-cv-01094 (N.D. Ohio).....................................................................................................2

*James v. Bob Ross Buick, Inc.*,
167 Ohio App. 3d 338 (2006) ...................................................................................................4

*JLKX Corp. v. Bobcat Energy Resources, LLC*,
2019 WL 4573710 (N.D. Ohio Sept. 20, 2019)........................................................... viii, 10

*Kinder  v. Meredith Co1p.*,
No.  14-cv-11284 (E.D. Mich.  Oct. 5, 2015) ....................................................................15

*Knapke v. PeopleConnect Inc.*,
553 F. Supp. 3d 865 (W.D. Wash. 2021), *rev'd on other grounds*
38 F. 4th 824 (9th Cir. 2022) .................................................................................................17

*Krause v. RocketReach, LLC*,
1:21-cv-01938 (N.D. Ill. Sept. 12, 2023)..........................................................................15

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) .................................................................................................13

*Miracle v. Bullitt Cnty., Ky.*,
No. CIV.A. 05-130-C (W.D. Ky. Aug. 15, 2008) ...............................................................12

*Moeller v. Advance Mag. Publishers, Inc. d/b/a Conde Nast*,
15-cv-05671 (S.D.N.Y. Mar. 6, 20 19)...................................................................................14

*Noel Green and Ryan Wetherby v. Datanyze, LLC*,
1:23cv-01605 (N.D. Ill.) ..........................................................................................................19

*Oriol Madrenas v. Crunchbase, Inc.*,
1:23-cv-03651 (N.D., Ill.)........................................................................................................19

Pelzer v. Vassalle,
655 F. App'x 352 (6th Cir. 2016) ...................................................................................... 15-16

Perlin v. Time Inc.,
No. 16-cv-10635 (E.D. Mich. Oct. 15, 2018)...................................................................15

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                                               <u>PAGE(S)</u>

*Pelzer v. Vassalle*,
  655 F. App'x 352 (6th Cir. 2016) .................................................................................. 15-16

*Perlin v. Time Inc.*,
  No. 16-cv-10635 (E.D. Mich. Oct. 15, 2018) ......................................................................15

*Robert Casar and Michael Fink v. Crunchbase, Inc.*,
  1:23-cv-00950 (N.D. Ohio) ...................................................................................................19

*Roe v. Amazon.com*,
  714 Fed. Appx. 565 (6th Cir. 2017) ......................................................................................17

*Roland v. Convergys Customer Mgmt. Grp. Inc.*,
  2017 WL 977589 (S.D. Ohio Mar. 10, 2017) ......................................................................11

*Sellards v. Midland Credit Management, Inc.*,
  2023 WL 3869023 (N.D. Ohio May 2, 2023) ............................................................. viii, 10

*Senter v. Gen. Motors Corp.*,
  532 F.2d 511 (6th Cir.1976) ...........................................................................................17, 19

*Taylor v. Trusted Media Brands, Inc.*,
  No. 16-cv-01812 (S.D.N.Y. Feb. 1, 2018) ...........................................................................15

*Tenn. Assoc. of Health Maintenance Orgs., Inc. v. Grier*,
  262 F. 3d 559 (6th Cir. 2001) ................................................................................... viii, 9

*Thacker v. Chesapeake Appalachia, LLC*,
  259 F.R.D. 262, 271 (E.D. Ky. 2009) ...................................................................................12

*UAW v. GMC*,
  497 F. 3d 615 (6th Cir. 2007) ................................................................................... viii, 10

*United States v. Jones & Lauhglin Steel Corp.*,
  804 F. 2d 348 (6th Cir. 1986) ................................................................................... viii, 9

*Wal-Mart Stores, Inc.  v. Dukes*,
  564 U.S. 338 (2011) .......................................................................................................17, 19

*Wal-Mart Stores, Inc. v. Visa USA Inc.*,
  396 F.3d 96 (2d  Cir. 2005) ...................................................................................................25

# TABLE OF AUTHORITIES

## CASES                                                        Page(s)

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982)...................................................................................25

*Willis v. Big Lots, Inc.*,
  No. 2:12-CV-604 (S.D. Ohio Mar. 17, 2017).....................................................21

*Young v. Nationwide Mut. Ins., Co.*,
  693 F. 3d (6th Cir. 2012) ..............................................................................16, 22

*Zacchini v. Scripps-Howard Broadcasting Co.*,
  47 Ohio St. 2d 224 (1976).................................................................................4

## STATUTES

Ohio Revised Code § 2741.01 ......................................................................... 1-4
Ohio Revised Code § 2741.02 ...........................................................................3
Ohio Revised Code § 2741.07 ...........................................................................4

## RULES

Fed. R. Civ. P. 23(a)(1).......................................................................................17
Fed. R. Civ. P. 23(a)(2)..................................................................................17, 20
Fed. R. Civ. P. 23(a)(3).......................................................................................18
Fed. R. Civ. P. 23(a)(4).................................................................................. 18-19
Fed. R. Civ. P. 23(b)(2)..................................................................................16, 19
Fed. R. Civ. P. 23(b)(3)................................................................................ 16, 20-21
Fed. R. Civ. P.23(c) .......................................................................................23, 25
Fed. R. Civ. P. 23(e) ................................................................................9, 23, 25
Fed. R. Civ. P. 23(h)(1).......................................................................................24

## OTHER SOURCES

David F. Herr, ANNOTATED MANUAL FOR COMPLEX LITIGATION
(Fourth) § 21.662 (2012).....................................................................................10

## STATEMENT OF ISSUES PRESENTED

1.      Whether the Court should preliminarily approve the Parties' Class Action Settlement.

2.      Whether the Court should (i) preliminarily certify the settlement class; (ii) appoint the proposed class representative, class counsel, and class administrator; (iii) approve of the proposed notice; and (iv) adopt the proposed schedule leading up to the fairness hearing.

## CONCISE STATEMENT OF REASONS TO GRANT MOTION

Settlements of class actions are generally favored and encouraged. *Franks v. Kroger Co.*, 649 F. 2d 1216, 1224 (6th Cir. 1981). Preliminary approval by the Court is the first step in allowing for a class action settlement. *Tenn. Assoc. of Health Maintenance Orgs., Inc. v. Grier*, 262 F. 3d 559, 565-66 (6th Cir. 2001). For this step, the Court must determine whether the proposed settlement is "fair, adequate, and reasonable." *United States v. Jones & Lauhglin Steel Corp.*, 804 F. 2d 348, 351 (6th Cir. 1986) (citations omitted). In doing so, the Court should evaluate whether the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with[in] the range of possible approval." *JLKX Corp. v. Bobcat Energy Resources, LLC*, 2019 WL 4573710, at * 7 (N.D. Ohio Sept. 20, 2019) (citations omitted). Additionally, the Court should also preliminarily certify the class under Rule 23, appoint class counsel, and approve the class representative. *Sellards v. Midland Credit Management, Inc.*, 2023 WL 3869023, at *3 (N.D. Ohio May 2, 2023) (citing *UAW v. GMC*, 497 F. 3d 615, 631 (6th Cir. 2007).

Here, the Parties' proposed Settlement is "fair, adequate, and reasonable." The Settlement was obtained through arms-length negotiations with the help of a non-partial mediator. The Settlement is in line with, if not exceeds, other right of publicity and privacy settlements and has no other deficiencies. Indeed, in addition to monetary relief, the Settlement provides prospective injunctive relief.  Zenleads has agreed

to stop the *exact* conduct that is at the center of this case – *i.e.*, its use of Ohio Settlement Class Members' names in connection with its commercial solicitations. This relief aligns perfectly with the goals of ORPS, and those of this lawsuit, as it will ensure that Class Members are protected as the Ohio legislature intended, further demonstrating the soundness of the Settlement.

The proposed Settlement Class easily satisfies Rule 23 requirements for preliminary approval. In short, the Class is ascertainable through Zenleads' search engine and contains 9,563 Ohio residents whose identities were allegedly used in a similar fashion by Zenleads, and who will obtain identical relief under the same statute.

Finally, the Notice Plan set forth in the Settlement provides the best notice practicable under the circumstances and will be administered by a class administrator with extensive experience. Class Counsel also has extensive class action experience, and the proposed Class Representative has diligently undertaken his role and has no conflicts with the Settlement Class. Accordingly, for these reasons and for the reasons detailed below, Plaintiff respectfully seeks an Order granting this Motion.

**ARGUMENT**

Plaintiff, Matthew Wilhelm ("Wilhelm" or "Plaintiff"), individually and on behalf of a class of similarly-situated persons, pursuant to Federal Rule of Civil Procedure 23, respectfully submits his memorandum in support of his motion for preliminary approval of class action settlement and requests that the Court enter an Order: (a) preliminarily approving the Parties' Settlement Agreement (the "Settlement"), attached hereto as <u>Exhibit 1</u>; (b) approving the claim form attached to the Settlement as Exhibit A; (c) approving the email, U.S. mail, and long form Class Notices attached to the Settlement as Exhibits B, C, and D; and (d) setting dates for opt-outs, objections, and a Final Approval Hearing. The Parties' proposed Order Preliminarily Approving Class Action Settlement and Certifying Settlement Class is attached to this motion as <u>Exhibit 2</u>.

**I.     Introduction.**

The underlying case is a class action filed by Plaintiff alleging that Defendant Zenleads Inc. ("Defendant" or "Zenleads") violated his rights under the Ohio Right of Publicity Statute ("ORPS"), Ohio Revised Code § 2741.01, *et seq.*, and Ohio common law by using his identity to advertise subscriptions to its internet based "people search" platform without permission. After arm's length negotiations, Plaintiff and Zenleads (collectively, the "Parties") agreed to settle this matter. Plaintiff respectfully submits that the proposed Settlement provides meaningful monetary and injunctive relief for all Settlement Class Members and, accordingly, requests that the Court grant preliminary approval of it.

The Settlement presented here originated with two similar class actions filed in 2023 against Zenleads regarding alleged right of publicity violations. The first lawsuit was filed in the Circuit Court of Cook County, Illinois, captioned *Hartz v. Zenleads Inc. d/b/a Apollo.io*, 2023

CH 5114 (Ill. Ct.) (the "Illinois Action") and was brought pursuant to the Illinois Right of Publicity Act on behalf of an Illinois class. The second lawsuit was filed against Zenleads in this Court, captioned *James Bellanca v Zenleads Inc. d/b/a Apollo.io*, No. 1:23-cv-01094 (N.D. Ohio) (the "Bellanca Action"), alleging violations under ORPS and common law on behalf of an Ohio class.

As discussed in more detail below, the parties in the Illinois Action and Bellanca Action participated in a formal mediation before the Honorable Sidney I. Schenkier (Ret.) of JAMS, which eventually culminated in a global settlement that would resolve both cases. Pursuant to that settlement, Zenleads agreed to pay $1,874,775.00 into two non-reversionary settlement funds (one for an Illinois settlement class, and another for an Ohio settlement class), to be distributed to settlement class members in each state.

To conform the pleadings to that global settlement, Class Counsel dismissed the Bellanca Action and filed an amended complaint in Illinois state court with the consent of Zenleads. The Amended Complaint added counts for the violations of the Ohio Right of Publicity law, Ohio Revised Code § 2741.01 *et. seq.* and Ohio common law and added Matthew Wilhelm as the putative class representative of the proposed Ohio settlement class.

The parties presented their global settlement to the Circuit Court of Cook County and after supplemental briefs and hearings, the presiding Illinois judge ruled that the Illinois Court did not have jurisdiction over the Ohio class or Plaintiff. The court thereafter granted preliminary approval of the Illinois class and dismissed the Ohio Plaintiff's claims without prejudice for refiling in this Court, which Plaintiff has done with the filing of this case.

The Parties have now executed a new Settlement—i.e., the "Ohio half" of the global settlement presented in Illinois—and Plaintiff presents it for preliminary approval here. The

Settlement proposes a Settlement Class consisting of 9,563 persons and a non-reversionary $1,004,115.00 settlement fund established by Zenleads. Each Settlement Class Member who submits a valid Claim Form will be entitled to a *pro rata* share from that fund, which, assuming a claims rate of 10% to 20%, will amount to estimated payments of approximately $320 to $641 to each Ohio Settlement Class Member, after costs and any fees are deducted. Compared against other privacy cases, as discussed below, this Settlement provides an appropriate monetary relief to Class Members. Additionally, Zenleads has agreed to not display the name of any Ohio Settlement Class Member, whose residence, according to Zenleads' records, remains in Ohio, on any page of its website that includes an offer to purchase Zenleads' products or services for a period of five years.

Given the relief proposed by the Settlement Agreement, the Court should not hesitate to find that the Settlement is well within the range of possible approval and provides an excellent result to the Settlement Class. Accordingly, Plaintiff respectfully requests that the Court grant this motion for preliminary approval in its entirety, certify the proposed Ohio Settlement Class, appoint his attorneys as Class Counsel, direct that the proposed Notices be disseminated to the Settlement Class, and set a Final Approval Hearing.

## II.     Factual and Procedural Background.

### A.     Plaintiff's Complaint against Zenleads.

Plaintiff filed this matter as a class action seeking statutory damages, an injunction, and other relief from Zenleads for violations of the Ohio Right of Publicity Statute ("ORPS"), Ohio Revised Code § 2741.01, *et seq.*, and Ohio common law. ORPS prohibits using an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance for commercial purposes without prior written consent. OH ST § 2741.02.  A person who violates ORPS is liable

in a civil action for actual damages, including any profits derived from and attributable to the unauthorized use of an individual's persona or, at the election of the plaintiff and in lieu of actual damages, statutory damages in the amount of at least $2,500 and not more than $10,000, as determined in the discretion of the trier of fact. OH ST § 2741.07(A)(1)(a) and (b). ORPS further provides that punitive or exemplary damages may be rewarded and authorizes the issuance of injunctive relief where appropriate. OH ST § 2741.07(A)(1)(c) and (D)(3). Ohio common law also precludes the commercialization of an individual's name or likeness through the tort of misappropriation. *James v. Bob Ross Buick, Inc.*, 167 Ohio App. 3d 338, 342 (2006) (citing *Zacchini v. Scripps-Howard Broadcasting Co.*, 47 Ohio St. 2d 224, 229-30 (1976) (adopting definition of the tort of misappropriation as set forth in the Restatement of Torts 2d, Section 652C)).

Plaintiff alleges that Zenleads operates a subscription website at apollo.io. When a visitor to the site performs a search, Zenleads returns a list of matched results, which include specific, identifying information on people in its databases. That information can include a person's name, current or former contact information (including business contact information), current or former employment affiliation (including but not limited to occupation and employment title), current or former employment location, list of possible business connections, likeness, photograph, image, social media information, or other identifying information.

Before Zenleads users, *i.e.*, customers/prospective customers, are allowed to use the platform, they are required to set up an account. This can be done for free. However, the free version is limited. For instance, when utilizing the free version, a user is only allotted five mobile phone number credits a month. After the credits are expended, the user receives a message indicating that he or she must enter into a paid subscription in order to view more numbers. A

user of the free version is also limited to 25 profiles per search and may only export ten profiles per month. Attempts to go beyond those limits also prompts solicitations for paid subscriptions.

Plaintiff alleges that the purpose behind Zenleads' use of individual profiles in conjunction with the limited free access to its platform is singular: to advertise and convince prospective customers to enroll in and ultimately purchase its monthly subscription services, whereby the user can obtain greater access to the platform and increase credit limits to enhance their sales and networking needs. In other words, the profiles, the limited platform usage, and the minimum number of mobile phone and export credits are part of Zenleads' overall effort to sell its monthly subscriptions. According to Plaintiff, such use violates ORPS and Ohio common law.

### B.    Litigation, Negotiations, and Settlement.

On May 25, 2023, the Illinois Action was filed. Around the same time, on May 31, 2023, the Bellanca Action was filed in this Court. Both cases similarly alleged that Zenleads violated the respective plaintiffs' rights of publicity through the use of their names and other identifying information for commercial purposes without consent. Shortly after service of each case, the parties began exploring the possibility of a global settlement.

To facilitate their discussions, the Parties agreed to formally mediate the case with the Honorable Sidney Schenkier (Ret.) of JAMS, who served as a mediator in at least two other right of publicity class actions similarly involving claims brought under Illinois's and Ohio's right of publicity laws, including for the finally approved federal class action settlements reached in *Butler v. Whitepages, Inc.*, No. 1:19-cv-04871, dkt. 277 (N.D. Ill. Sept. 29, 2022) and *Fischer v. Instant Checkmate LLC*, No. 1:19-cv-04892, dkt. 286 (N.D. Ill. Feb. 15, 2024).[1] The Parties exchanged mediation briefs and participated in a full-day mediation session with Judge

---

[1] Copies of the final approval orders in the *Butler* and *Fischer* actions are attached hereto as Exhibits 3 and 4 respectively.

Schenkier on July 13, 2023. The mediation did not result in an immediate settlement, but the Parties agreed to continue working with Judge Schenkier toward resolution. After considerable arm's-length negotiations over the following months, the informal sharing of information about potential class compositions, and with the ongoing help and supervision of Judge Schenkier, the Parties ultimately agreed to resolve both actions through a single class action settlement, exactly like the *Butler* and *Fischer* cases referenced above.

In accordance with their Settlement Agreement, Plaintiffs Ira Holtzman (an Illinois resident) and Matthew Wilhelm (an Ohio resident), filed with the consent of all Parties and permission of the Illinois court, a First Amended Class Action Complaint ("FAC") on behalf of themselves and an Illinois Class and an Ohio class in the Illinois proceedings. To facilitate the Settlement, the former named representatives (Mathew Hartz, Lauren Randle, and James Bellanca) voluntarily dismissed their individual claims pursuant to an individual settlement agreement with Zenleads. These individual claims were dismissed because these former class representatives are not members of the proposed Settlement Classes, which are narrower than the classes alleged in the original complaints.

As previously pointed out, the Illinois Chancery Court entered preliminary approval of the Illinois Class, concluded that it lacked jurisdiction over the Ohio plaintiff and proposed settlement class, and dismissed the Ohio claims without prejudice to permit refiling in this Court, which Plaintiff has done.

**III.    Terms of the Settlement Agreement.**

The terms of the Settlement are set forth in the Class Action Settlement Agreement and are briefly summarized here:

### A.    Class Definition.

The Settlement calls for a Settlement Class, defined as follows:

**Ohio Settlement Class**:  All individuals with a primary Ohio residential address and whose profile on Zenleads was, according to Zenleads' records, added to a free user's account within 15 minutes of a subscription purchase between October 14, 2021 and October 3, 2023.

Excluded from the class are: (1) any Judge presiding over this action and members of their families, (2) Zenleads, Zenleads' subsidiaries, parent companies, successors, predecessors, and any entity in which Zenleads' subsidiaries, parent companies, successors, predecessors, and any entity in which Zenleads or its parents have a controlling interest, (3) persons who properly execute and file a timely request for exclusion from the class, and (4) the legal representatives, successors, or assigns of any such exclude person. (*Settlement,* § 1.13.)

### B.    Settlement Payments.

Pursuant to the Settlement, Zenleads will establish an Ohio non-reversionary Settlement Fund in the amount of $1,004,115.00 (*Id.,* § 1.16). Ohio Settlement Class Members will be entitled to submit claims against the Ohio Settlement Fund. (*Id.,* § 2.1). All Ohio Settlement Class Members that submit a valid claim will be entitled to a *pro rata* portion of the Fund after payment of Settlement Administration Expenses, attorneys' fees and costs, and any incentive award, if approved by the Court. (*Id.*) Assuming a 10%-20% claims rate, Class Counsel estimates that each claiming Ohio Settlement Class Member will receive a net payment of $320 to $641.

Any uncashed checks or electronic payments unable to be processed within 90 days of issuance shall revert to the Ohio Settlement Fund, to be distributed *pro rata* to claiming Ohio Settlement Class Members, if practicable, or in a manner otherwise directed by the Court upon application made by Class Counsel. (*Id.,* § 2.1(e)).  No portion of either Settlement Fund will

revert to Zenleads should the settlement be approved. (*Id.,* § 1.16)

### C. Prospective Relief.

For a period of five years after the Settlement is finally approved, Zenleads will not display the name of any Ohio Settlement Class Member, whose residence, according to Zenleads' records, remains in Ohio on any page of its website that includes an offer to purchase Zenleads' products or services. (Agreement *Id.* § 2.2(a)-(c))

### D. Payment of Settlement Notice and Administrative Costs.

All Settlement notice and administrative costs shall be paid from the Ohio Settlement Fund. This includes all expenses incurred by the Settlement Administrator in, or relating to, administering the Settlement, providing Notice, creating and maintaining the Settlement Website, receiving and processing Claim Forms, dispersing settlement payments, issuing 1099s as necessary, and any other related expenses. Plaintiff requests that this Court approve Class-settlement.com as the Settlement Administrator. Its CV is attached hereto as <u>Exhibit 5</u>. Plaintiff's counsel has used Class-settlement.com on over 200 class settlements and can attest to its competency and responsiveness.

### E. Payment of Attorneys' Fees, Costs, and Incentive Award.

As part of the Settlement, Zenleads has agreed that Class Counsel are entitled to reasonable attorneys' fees in an amount to be determined by the Court by petition. (*Id.* § 8.1.) Proposed Class Counsel has agreed, with no consideration from Zenleads, to limit its request for fees to 35% of each Settlement Fund, plus its litigation expenses. Proposed Class Counsel will also seek, with no consideration from Zenleads and subject to Court approval, an incentive award for Plaintiff in an amount of up to $7,500 in recognition of his efforts as Class Representative. (*Id.* §8.3.) Plaintiff will move for these payments via a separate request after preliminary

approval and prior to the deadline to object.

**F.      Release of Liability.**

In exchange for the relief described above, each Ohio Settlement Class Member will release Zenleads and its related entities from all claims in relation to Zenleads' use of identifying information—including, without limitation, name, age, current or former contact information (including business contact information), current or former employment affiliation (including but not limited to occupation and employment title), current or former employment or residence locations, list of possible business connections, likeness, photograph, image, social media information, for other identifying information—to advertise, promote, or in connection with an offer for sale any products or services. (*Id.* § 1.23.)

**IV.     The Court Should Preliminarily Approve the Settlement; Certify the Settlement Class; Appoint the proposed Class Representative, Class Counsel, and Class Administrator; Approve the Proposed Notice; and Adopt the Proposed Schedule Leading up to the Fairness Hearing.**

Class actions may be settled or compromised only with the approval of the Court and after giving notice of the proposed settlement to the class. Fed. R. Civ. P. 23(e). There is a three-step process that district courts follow when approving a class action settlement:

> (1) the court must **preliminarily approve** the proposed settlement, i.e., the court should determine whether the compromise embodied in the decree is illegal or tainted with collusion; (2) members of the class must be given notice of the proposed settlement; and (3) a hearing must be held to determine whether the decree is fair to those affected, adequate and reasonable.

*Tenn. Assoc. of Health Maintenance Orgs., Inc. v. Grier*, 262 F. 3d 559, 565-66 (6th Cir. 2001).

At the preliminary approval stage—the stage at issue here—the Court must determine whether the proposed settlement is "fair, adequate, and reasonable." *United States v. Jones & Lauhglin Steel Corp.*, 804 F. 2d 348, 351 (6th Cir. 1986) (citations omitted). In doing so, the Court should evaluate whether the proposed settlement "appears to be the product of serious,

informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with[in] the range of possible approval." *JLKX Corp. v. Bobcat Energy Resources, LLC*, 2019 WL 4573710, at * 7 (N.D. Ohio Sept. 20, 2019) (citations omitted). Additionally, the Court should also preliminarily certify the class under Rule 23, appoint class counsel, and approve the class representative. *Sellards v. Midland Credit Management, Inc.*, 2023 WL 3869023, at * 3 (N.D. Ohio May 2, 2023) (citing *UAW v. GMC*, 497 F. 3d 615, 631 (6th Cir. 2007)).

Since the Court "will have an opportunity to analyze the proposed Settlement Agreement at a final approval hearing, at this junction, the Court is not obligated to, nor could it reasonably, undertake a full and complete fairness review." *JLKX Corp.*, 2019 WL 4573710, at * 7 (citing *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 350 (N.D. Ohio 2001)) (internal quotations omitted); *see also* David F. Herr, ANNOTATED MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.662 (2012) (during the preliminary approval proceedings, "the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval"). The Court should also be guided by the fact that settlements of class actions are generally favored and encouraged. *Franks v. Kroger Co.*, 649 F. 2d 1216, 1224 (6th Cir. 1981).

Here, and as demonstrated more fully below, the Settlement is "fair, adequate, and reasonable" and, thus, should be preliminarily approved and the Settlement Class preliminarily certified.

**A.      The Proposed Settlement Satisfies the Standard for Preliminary Approval.**

The Proposed Settlement provides an excellent result for the Settlement Class and warrants preliminary approval. The monetary reward for the Class is equal to, if not greater than,

other right of publicity settlements. It also provides for prospective injunctive relief, prohibiting Zenleads from engaging in the very conduct alleged in the Complaint. The Settlement was arrived at through arms-length negotiations with the help of a non-partial mediator, the Honorable Sidney I. Schenkier (Ret.) of JAMS. Finally, the Settlement enables the Settlement Class to avoid the risks associated with class actions, particularly class actions in this area of law, where the issues are new and the outcome uncertain.

### 1. The Proposed Settlement was reached after serious, informed, and arm's-length negotiations.

Arm's length negotiations conducted by competent counsel constitute *prima facie* evidence of fair settlements. *See, e.g., Roland v. Convergys Customer Mgmt. Grp. Inc*., 2017 WL 977589, at *1 (S.D. Ohio Mar. 10, 2017) (noting that settlement was "reached after good faith, arms' length negotiations, warranting a presumption in favor of approval"); *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001) (absence of any evidence suggesting collusion or illegality "lends toward a determination that the agreed proposed settlement was fair, adequate and reasonable"); *In re Polyurethane Foam Antitrust Litigation*, 2012 WL 12868246, at * 4 (N.D. Ohio Jan. 23, 2012) ("Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary") (citation omitted).

 In this case, the settlement was the result of intensive, arm's-length negotiations between attorneys who have extensive class action litigation experience and who have knowledge of the legal and factual issues of this case in particular. Settlement negotiations in this case took place over the course of several months and involved a mediation session and weeks of follow-up discussions with an experienced and neutral mediator at JAMS. No collusion or illegality existed during the settlement process. The Parties' counsel support the settlement as fair and reasonable, and all certify that it was reached at arms'-length.

### 2.      The Proposed Settlement Has No Obvious Deficiencies.

Although Plaintiff believes that the claims asserted in the Class Action are meritorious and the Class would ultimately prevail at trial, continued litigation against Zenleads poses significant risks that make any recovery for the Class uncertain. The fairness and adequacy of the Settlement is underscored by consideration of the obstacles that the Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. *See Amos v. PPG Industries, Inc.*, 2015 WL 4881459, at *1 (S.D. Ohio Aug. 13, 2015) ("In general, most class actions are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them.") (internal citations and quotations omitted); *Miracle v. Bullitt Cnty., Ky.*, No. CIV.A. 05-130-C, 2008 WL 3850477, at *6 (W.D. Ky. Aug. 15, 2008) (the "uncertainty of the outcome of the litigation makes it more reasonable for the plaintiffs to accept the settlement offer from the defendants").

There are no grounds to doubt the fairness of the proposed Settlement or other obvious deficiencies, such as unduly preferred treatment of Plaintiff or excessive attorney compensation. *Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 271 (E.D. Ky. 2009). Plaintiffs, like all other Class Members, will receive their settlement benefit in accordance with a claims process that will be presented to the Court for approval.

The matter of attorneys' fees and payment of expenses, as well as any Service Award for Plaintiff, will be determined by the Court. Proposed Class Counsel has agreed to limit their attorneys' fee request to thirty-five percent of the Common Fund ($351,440.25), which is well within the range of fees awarded within the Sixth Circuit. *See In re Cincinnati Gas & Elec. Co. Sec. Litig.*, 643 F. Supp. 148, 150 (S.D. Ohio 1986) (in the Sixth Circuit, attorneys' fees "typically … range from 20% - 50%"). Plaintiff further seeks a Service Award of Seven-

Thousand Five Hundred Dollars ($7,500.00) for his active involvement in this litigation (which amounts to .78 cents per class member). Because Plaintiff and Class Counsel will move for an award of costs, fees, expenses, and the Plaintiff Service Award at least 14 days before the objection and opt out deadlines, the Court will have the ability to consider these payments before granting final approval.

Finally, aside from the monetary relief, the injunctive relief obtained in the Settlement demonstrates Plaintiff's and proposed Class Counsel's strong representation of the class.  (*See* Agreement § 2.3.)  Specifically, as part of this Settlement, Zenelads has agreed to stop the *exact* conduct that is at the center of this case – *i.e*., its use of Ohio Settlement Class Members' names in connection with its commercial solicitations.  This prospective relief aligns perfectly with the goals of ORPS, and those of this lawsuit, as it will ensure that Class Members are protected as the Ohio legislature intended, further demonstrating the soundness of the Settlement.

### 3. The Proposed Settlement falls within the range of possible approval.

The Settlement is expected to provide per-claimant payments similar to other statutory privacy cases. Zenelads has agreed to a settlement fund of $1,004,115.00 for a class of approximately 9,563 Ohio residents.  This amount will be split equally – with no reversion to Zenelads – among claiming Ohio Settlement Class Members. (*See* Agreement §§ 1.16, 2.1(a).) Assuming a claims rate of 10-20%, the Settlement will result in an estimated net payment (meaning after all fees and costs are deducted) of approximately $320 to $641 for each Ohio Settlement Class Member. This amount is superior to payments recovered in many other statutory privacy class actions, particularly against a backdrop where settlements have commonly secured no relief to the class or only *cy pres* relief.  *See, e.g., Lane v. Facebook, Inc.,* 696 F.3d 811, 820-22 (9th Cir. 2012) (resolving tens of millions of claims under the Electronic

13

Communications Privacy Act ["ECPA"] for a $9.5 million *cy pres*-only settlement – amounting to pennies per class member – where $10,000 in statutory damages were available per claim); *In re Google Buzz Priv. Litig.,* No. C 10-00672 JW, 2011 WL 7460099, at *3-5 (N.D. Cal. June 2, 2011) (resolving tens of millions of claims, again under the ECPA, for $8.5 million *cy pres*-only settlement); *see also Frank v. Gaos,* 139 S. Ct. 1041, 1047-48 (2019) (Thomas, J., dissenting).

The monetary payments to the Class in this case are also greater than recent privacy settlements that have resulted in direct payments to class members. In *Fraley v. Facebook, Inc.,* 966 F. Supp. 2d 939, 944 (N.D. Cal. 2013), which is a class settlement brought under a state's (California) right of publicity statute, the district court finally approved a class settlement resulting in $15 payments to claimants, which represented 2% of the $750 in statutory damages that claiming class members could have obtained at trial. That decision, as affirmed by the Ninth Circuit, was held to represent a fair and reasonable compromise of class members' claims. *See Fraley v. Batman,* 638 F. App'x 594, 597 (9th Cir. 2016) ("The district court did not abuse its discretion in approving a class action settlement which awarded $15 to each claiming class member, notwithstanding the possibility of a $750 statutory penalty. The monetary award of $15 was reasonable in light of the minimal (if any) harm suffered by the plaintiffs.").

The payments also meet or exceed those found in other recent privacy class settlements. For instance, class settlements under Michigan's Preservation of Personal Privacy Act – which, at the time, provided $5,000 in statutory damages for violations – resulted in payments to claimants of between $40 and $82 (*i.e.*, 0.8% - 1.65% of a complete recovery under the statute) at a 10-20% claims rate among settlement class members. *See, e.g., Moeller v. Advance Mag. Publishers, Inc. d/b/a Conde Nast,* 15-cv-05671, dkt. 143 (S.D.N.Y. Mar. 6, 2019) (approving PPPA settlement where claiming class members received approximately $82 each); *Halaburda*

14

*v. Bauer Publ'g Co., LP,* No. 12-cv-12831, dkt. 68 (E.D. Mich. Jan. 6, 2015) ($74 per claiming class member); *Kinder v. Meredith Co1p.,* No. 14-cv-11284, dkt. 72 (E.D. Mich. Oct. 5, 2015) ($50 per claiming class member); *Perlin v. Time Inc.,* No. 16-cv-10635, dkt. 55 (E.D. Mich. Oct. 15, 2018) ($50 per claiming class member); *Coulter-Owens v. Rodale, Inc.,* No. 14-cv-12688, dkt. 54 (E.D. Mich. Sept. 29, 2016) ($44 per claiming class member); *Taylor v. Trusted Media Brands, Inc.,* No. 16-cv-01812, dkt. 87 (S.D.N.Y. Feb. 1, 2018) ($41 per claiming class member).

The Settlement also fits nicely as compared with other recent people search right of publicity class action settlements that have received final approval by courts in the Northern District of Illinois. *See, e.g.*, *Butler v. Whitepages,* 1:19-cv-04871, dkt. 277 (N. D. Ill. Sept. 28, 2022) (J. Feinerman) (final approval for settlement valued at $40 per Illinois class member and $100 for each Ohio class member); *Krause v. RocketReach, LLC,* 1:21-cv-01938 (N.D. Ill. Sept. 12, 2023) (J. Bucklo) (final approval to a class valued at $60 for each Illinois class member); *Fischer v. Instant Checkmate*, 1:19-cv-04892, dkt. 286 (N.D. Ill. Feb. 16, 2024) (final approval for settlement valued at $112.50 for each Ohio class member).

In sum, the Settlement is fair, reasonable, and adequate, and the Court is likely to approve it after notice to the class. Therefore, the Court should preliminarily approve the Settlement, so the Settlement Class can be notified and respond.

### B. Certification of the Settlement Class is Appropriate.

The Supreme Court has recognized that the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. v. Windsor*, 521 U.S 591, 620 (1997). For the Court to certify a class, Plaintiff must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b). *See Pelzer v. Vassalle*, 655

F. App'x 352, 363 (6th Cir. 2016). The four requirements of Rule 23(a) are numerosity, commonality, typicality, and adequacy. Here, Plaintiff seeks certification of the Settlement Class under Rules 23(b)(2) and (3). To certify a class for injunctive and declaratory relief under Rule 23(b)(2), Plaintiff must show that Zenleads "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). For Rule 23(b)(3), certification is appropriate where "the questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." Fed. R. Civ. P. 23(b)(3).

### 1. The Settlement Class is ascertainable.

"Before a court may certify a class pursuant to Rule 23, the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is within the class." *Young v. Nationwide Mut. Ins*., Co., 693 F. 3d, 532, 537-38 (6th Cir. 2012). This requirement is satisfied where class membership can be determined "by reference to objective criteria." *Id*. at 538.

Here, the Class is specifically defined and Class Members are identifiable through Zenleads' data records. This makes sense since Zenleads provides an online platform that enables users to search for and obtain accurate information on individuals searched. These records will show which profiles were searched for within the parameters defined by the Class definition. By any metric, that is objective criteria by which to identify the class.

### 2. Numerosity.

The numerosity requirement under Rule 23(a)(1) is satisfied where the class is so numerous

that joinder of all Class Members is impracticable. Fed. R. Civ. P. 23(a)(1). "There is no specific number below which class action relief is automatically precluded. Impracticability of joinder is not determined according to a strict numerical test but upon the circumstances surrounding the case." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 n.24 (6th Cir.1976); *see also In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1076 (6th Cir. 1996) ("the Sixth Circuit has previously held that a class of 35 was sufficient to meet the numerosity requirement"); *Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 105 F.R.D. 506, 508 (S.D. Ohio 1985) (certifying a 23-person class).  Here, the 9,563 Class Members satisfy the numerosity element.

### 3. Commonality.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Both the majority and dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do." *Id.* (internal quotation marks and citation omitted).

Here, common issues or law and fact permeate this entire case. In order to state a right of publicity claim under Ohio law, a plaintiff must allege that the defendant used his or her identity for a commercial purpose without first obtaining plaintiff's written consent, and that the identity has value. *Knapke v. PeopleConnect Inc.*, 553 F. Supp. 3d 865, 876 (W.D. Wash. 2021), *rev'd on other grounds*, 38 F.4th 824 (9th Cir. 2022); *Roe v. Amazon.com*, 714 Fed. Appx. 565, 568 (6th Cir. 2017) (citations omitted). These allegations stem directly from Zenleads' alleged conduct, are

17

the same for each Settlement Class Member, and will drive the litigation. Thus, by proving his own claims, Plaintiff would prove the claims of the other Class Members.

### 4.    Typicality

To satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. "The typicality requirement ensures that the representative's interests will be aligned with those of the represented group and that the named plaintiff will also advance the interests of the class members." *Chesher v. Neyer*, 215 F.R.D. 544, 549 (S.D. Ohio 2003). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.*; *see also Am. Med. Sys.*, 75 F.3d at 1082 (same). Typicality seeks to ensure that there are no conflicts between the class representatives' claims and the claims of the Class Members represented.

Here, there is nothing separating Plaintiff's right of publicity claims from any other Class Member. Plaintiff alleges that Zenleads violated his right of publicity by using his identity without permission to solicit paid subscription to its web-based search platform—precisely the violative conduct Zenleads is alleged to have done to every other Settlement Class Member. Because Plaintiff's claims arise from the same source of conduct and are based on the same legal theory as all other Settlement Class Members, typicality is satisfied.

### 5.    Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are two criteria: (1) the "representative must have common interests with unnamed members of the class," and (2) "it must appear that the representatives will vigorously prosecute the interests of the class through

qualified counsel." *Am. Med. Sys.*, 75 F.3d at 1083 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 594.

Plaintiff has no conflicts with the Settlement Class and has participated actively in the case by reviewing pleadings, being involved in the progress of the litigation, and stepping up on behalf of the Class to bring this action. Moreover, Class Counsel have significant experience in class and complex litigation, including more than 250 class actions in state and federal courts throughout the country. Attached as Exhibit 6 is Resume of Anderson + Wanca, including a list of certified cases. Plaintiff's counsel are actively litigating several right of publicity class actions in Ohio and Illinois. *See, Noel Green and Ryan Wetherby v. Datanyze, LLC,* 1:23cv-01605 (N.D. Ill.); *Charisma Hudson and Brian Schaefer v. Datanyze, LLC,* 3:23-cv-00466 (N.D. Ohio); *Ira Holtzman v. Zenleads, Inc.,* 2023CH05114 (Cir. Ct. Cook County, Ill.); *Robert Casar and Michael Fink v. Crunchbase, Inc.,* 1:23-cv-00950 (N.D. Ohio); *Oriol Madrenas v. Crunchbase, Inc.,* 1:23-cv-03651 (N.D. Ill.).

### 6. Certification under Rule 23(b)(2) is appropriate.

Rule 23(b)(2) states that a class action may be maintained if Rule 23(a) is satisfied and if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or to none of them.'" *Gooch v. Life Investors Ins. Co. of Am.*, 672 F. 3d 402, 428 (6th Cir. 2012) (quoting *Dukes*, 564 U.S. at 360).

Here, Plaintiff alleges that by using Plaintiff and the Class members identities, names,

and likenesses similarly for commercial purposes, Zenleads acted on grounds generally applicable to the Class as a whole, making injunctive relief appropriate. Indeed, ORPS provides injunctive relief as a remedy and Zenleads has agreed to stop its alleged use of the Class's identities as part of the Settlement.

### 7.    Certification under Rule 23(b)(3) is appropriate.

Class certification under Rule 23(b)(3) has two components: predominance and superiority. "The Rule 23(b)(3) predominance requirement parallels the Rule 23(a)(2) commonality requirement in 'that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues.'" *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *6 (W.D. Ky. Dec. 22, 2009) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1084 (6th Cir. 1996)). When assessing these components, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 (on a request for settlement-only class certification, "a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

The Sixth Circuit has explained that "named plaintiffs must show, and district courts must find, that questions of law or fact common to members of the class predominate over any questions that affect only individual members." *In re WhirlpoolCorp. Front-Loading Washer Prods. Liab. Litig.*,722 F.3d 838, 860 (6th Cir. 2013). Courts also consider whether a class action is "superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) provides a non-exhaustive list of factors to be considered when making this determination. These factors include: (i) the class members' interests in individually

controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. *Willis v. Big Lots, Inc.*, No. 2:12-CV-604, 2017 WL 1063479, at *2 (S.D. Ohio Mar. 17, 2017) (citing Fed. R. Civ. P. 23(b)(3)).

In this case, and as discussed above, the common factual and legal questions all cut to the issues "at the heart of the litigation." Indeed, the answers to these questions—whether Zenleads used the identities of Plaintiff and the Settlement Class Members for commercial purposes without permission—are not tangential or theoretical such that the litigation will not be advanced by certification. Rather, they go right to the center of the controversy, and the answers will be the same for each Settlement Class Member. As such, because the class-wide determination of this issue will be the same for everyone and will determine whether any class member has a right of recovery, the predominance requirement is readily satisfied.

The second prong of Rule 23(b)(3)—that a class action is superior to other available methods for the fair and efficient adjudication of the controversy—is also readily satisfied. *See* Fed. R. Civ. P. 23(b)(3). The Settlement provides members of the Settlement Class with quick, simple, and certain relief, and contains well-defined administrative procedures to ensure due process. This includes the right of any Class Member who is dissatisfied with the settlement to object to it or to request exclusion from the Class.

Moreover, there are no other actions against Zenleads relating to the conduct alleged. And concentrating claims in this forum also weighs in favor of superiority. This claim involves an Ohio plaintiff representing a class of Ohio residents asserting claims under Ohio law. This Court is thus an appropriate forum in which to concentrate the litigation and settlement of these

aggregated claims.

Adjudicating individual actions here is impracticable. The cost of litigating each Class Member's case on an individual basis would be substantial; the most reasonable and economically feasible method of litigating and resolving these hundreds of claims is through the class device. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device") (internal quotations omitted).

Similarly, the amount in dispute for individual class members is too small, the technical issues are too complex, and the required motion practice, expert testimony and document review would be far too costly for Class Members to bring a case individually. The individual amounts at issue are not sufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of competent counsel. Instead, the individual prosecution of Settlement Class Members' claims would be prohibitively expensive, and, if filed, would needlessly delay resolution and lead to inconsistent rulings. Because this Action is being settled on a class-wide basis, such theoretical inefficiencies are resolved, and the Court need not consider further issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there will be no trial").

### C. The Court should appoint the proposed Class Representative, Class Counsel, and Class Action Administrator.

Plaintiff, Matthew Wilhelm, seeks to be appointed as Class Representative for the Settlement Class. As discussed above, Plaintiff has cooperated with counsel, provided informal

discovery, and assisted in the preparation of the Complaint. Moreover, Plaintiff is continuing to vigorously prosecute this case, including overseeing the notice program, and defending the Settlement Agreement against any objectors, all the way through the Court's final approval. Because he is an adequate representative, the Court should appoint him as class representative.

Also, the Court should designate Brian J. Wanca and the law firm of Anderson + Wanca as Class Counsel.

Finally, the parties have agreed that Class-setlement.com shall act as Settlement Administrator. Class-setlement.com has a long history of successful settlement administrations in class actions. (*Merryman Declaration,* <u>Exhibit 5</u>.) Class-settlement.com is also administrating the settlement of the Illinois right of publicity class. The Court should appoint Class-settlement.com as Settlement Administrator here.

**D. The proposed form and manner of notice is reasonable and should be approved.**

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." Fed. R. Civ. P.23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 94 S. Ct.2140, 2150 (1974). To satisfy these standards and "comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'" *In re Countrywide*, 2009 WL 5184352, at *12 (quoting *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008)).

The Notice Plan set forth in the Settlement provides the best notice practicable under the circumstances. The Settlement Notice will be disseminated directly to all persons who fall within the definition of the Class and whose names, emails, and addresses can be identified

with reasonable effort from Defendant's records, via email and if unsuccessful, by U.S. mail. Additionally, the long form notice will be made available on the website specifically created for this settlement. Class-settlement.com will administer the Settlement Website containing important and up-to-date information about the settlement.

The proposed forms of the claim form, email notice, mail notice, and website long form notice are attached to the Settlement Agreement as Exhibits A, B. C, and D.  They inform the Settlement Class about the settlement terms, provide a claim form and identify the relevant dates (such as opt-out and objection deadlines and claim form submission deadline, along with the date of the final approval hearing). They inform the members of the Settlement Class about the requirements for objecting to the settlement, for opting out, and for submitting a claim.  In the context of a proposed settlement, the notice need not contain every term of the proposed settlement so long as it contains information about how to obtain the terms and fairly summarizes them.

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Here, the proposed Notice Plan satisfies the requirements of Rule 23(h)(1), as it notifies Class Members that Class Counsel will apply to the Court for attorneys' fees of no more than thirty-five percent of the common fund, plus reimbursement of litigation costs and expenses. The proposed Notice Plan complies with Rule 23 and due process because it informs Class Members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the Settlement Class, the claims asserted, and the benefits offered; (3) the binding effect of a judgment if a Class Member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting

exclusion and that one may make an appearance through counsel; (5) information regarding the Class Representative's request for a service award; (6) information regarding the payment of proposed Class Counsel fees; and (7) how to make inquiries. Fed. R. Civ. P. 23(c)(2)(B).

Thus, the Notice Plan and Settlement Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa USA Inc.*, 396 F.3d 96, 114 (2d Cir. 2005). The manner of notice, which includes individual notice by mail or email to all those who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See Frost v. Household Realty Corp.*, 61 F. Supp. 3d 740, 745 (S.D. Ohio 2004); *see also Weinberger v. Kendrick*, 698 F.2d 61, 71 (2d Cir. 1982). Thus, the Notice Plan should be approved. Fed. R. Civ. P. 23(c)(2)(A).

**E.   The Court Should Provide a Schedule Leading Up to the Fairness Hearing.**

Plaintiff requests that the Court set a schedule, leading up to a Fairness Hearing, that would include, *inter alia*, deadlines for notice to Class Members for Class Members to object to the Settlement, to opt out of the Settlement, and to make claims under the Settlement; and deadlines for the filing of papers in support of final approval, and in support of attorneys' fees and expenses. A proposed schedule is included in the proposed Preliminary Approval Order. At the Fairness Hearing, the Court may hear all evidence necessary to make its final evaluation of the settlement. *See* Fed. R. Civ. P. 23(e)(2). Proponents of the Settlement may offer arguments in support of final approval. In addition, Class Members who have properly objected may be heard.

## **CONCLUSION**

Plaintiff respectfully asks the Court to enter an Order: (1) certifying the Class for purposes of settlement; (2) appointing Plaintiff as representatives of the Class; (3) appointing the undersigned counsel as Class Counsel; (4) appointing Class-settlement.com as Settlement Administrator; (5) granting preliminary approval of the Proposed  Settlement; (6) approving the proposed form and manner of notice to the Class; (7) directing the  notice to the Class be disseminated by the Settlement Administrator; (8) establishing a deadline  for Class  members to request exclusion from the Settlement Class or file objections to the  Settlement; and (9) setting the proposed schedule for completion of further settlement proceedings,  including scheduling the Final Approval Hearing. A proposed Order Granting Preliminary  Approval of Class Action Settlement is attached as Exhibit 2.

Respectfully submitted,

MATTHEW WILHELM, individually and as the  representative of a class of similarly-situated persons

/s/ Brian J. Wanca
Brian J. Wanca
Ryan M. Kelly
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL  60008
Tele: 847-368-1500 / Fax: 847-368-1501
bwanca@andersonwanca.com
rkelly@andersonwanca.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 15, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record and a copy will be served upon Defendant(s) along with the Summons and Complaint.


/s/ Brian J. Wanca
_____