**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| MATTHEW WILHELM, an Ohio citizen, individually and as a representative of a class of similarly-situated persons, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.:  1:24-cv-00506 |
| v. | ) | |
| | ) | Honorable Brigid Meehan Brennan |
| ZENLEADS, INC. d/b/a Apollo.io, a Delaware corporation, | ) ) | Class Action |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION**
**FOR AWARD OF ATTORNEYS' FEES, EXPENSES, AND**
**CLASS REPRESENTATIVE INCENTIVE AWARD**

## I.       INTRODUCTION

The instant case is a class action filed by Plaintiff alleging that Defendant Zenleads Inc. ("Defendant" or "Zenleads") violated his rights under the Ohio Right of Publicity Statute ("ORPS"), Ohio Revised Code § 2741.01, *et seq.*, and Ohio common law by using his identity to advertise subscriptions to its internet based "people search" platform without permission.  On June 18, 2024, this Court preliminarily approved a proposed class action settlement ("Settlement") between Plaintiff and Defendant. This Settlement creates a $1,004,115.00 non-reversionary common fund to compensate approximately 9,563 persons for Defendant's alleged violations of ORPS and Ohio common law.

If finally approved, all Ohio Settlement Class Members who submit a valid claim will receive a *pro rata* share of the Settlement Fund.  Each Settlement Class Member is estimated to receive a check approximately between $320 and $641 after deductions for notice and administration expenses, attorneys' fees, litigation expenses, and an incentive award for the Plaintiff.  The settlement also provides prospective injunctive relief for the Class.  As discussed below, these amounts compare favorably and in fact exceed per class member settlement amounts achieved in other right of publicity cases.  The Settlement advises the Ohio Settlement Class of these deductions, with the amount of fees being spelled out as a percentage. This Motion will be posted to the Settlement Website so that any Settlement Class Member may review it.

As compensation for the substantial benefit conferred upon the Settlement Class, Plaintiff respectfully moves for an award of attorneys' fees of $351,671.25, which represents 35% of the Settlement that will be paid out, plus $35,070.15 in out-of-pocket expenses, notice and administrative expenses in an amount not to exceed $20,675.00, and a class representative incentive or service award of $7,500.00. Plaintiff submits that the risks and work involved in this

litigation and the ultimate reward provided to the Class justifies Plaintiff's requests for attorneys' fees, expenses, and an incentive award. Plaintiff respectfully requests that this motion be granted.

## II.       RELEVANT BACKGROUND

### A.       The Ohio Right of Publicity Statute ("ORPS") & Ohio Common Law

The Ohio Right of Publicity Statute ("ORPS"), Ohio Revised Code § 2741.01, *et seq.*, prohibits using an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance for commercial purposes without prior written consent. OH ST § 2741.02. Ohio common law also precludes the commercialization of an individual's name or likeness through the tort of misappropriation. *James v. Bob Ross Buick, Inc.*, 167 Ohio App. 3d 338, 342 (2006) (citing *Zacchini v. Scripps-Howard Broadcasting Co.*, 47 Ohio St. 2d 224, 229-30 (1976) (adopting definition of the tort of misappropriation set forth in the Restatement of Torts 2d, Section 652C)).

ORPS defines "persona" as "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value." OH ST § 2741.01(A). "Commercial purpose" is defined in pertinent part as "the use of or reference to an aspect of an individual's persona …. (2) For advertising or soliciting the purchase of products, merchandise, goods, services, or other commercial activities not expressly exempted under this chapter." OH ST § 2741.01(B).

A person who violates ORPS is liable in a civil action for actual damages, including any profits derived from and attributable to the unauthorized use of an individual's persona or, at the election of the plaintiff and in lieu of actual damages, statutory damages in the amount of at least $2,500 and not more than $10,000, as determined in the discretion of the trier of fact. OH ST § 2741.07(A)(1)(a) and (b). ORPS further provides that punitive or exemplary damages may be rewarded and authorizes the issuance of injunctive relief where appropriate. OH ST § 2741.07(A)(1)(c) and (D)(3).  The remedies provided for in ORPS are not exclusive; rather, they

are in addition to any other remedies provided for by state or federal statute or common law.  OH ST § 2741.08.

### B.      Procedural History.

This case and settlement originated with two similar class actions filed in 2023 against Zenleads regarding alleged right of publicity violations. The first lawsuit was filed in the Circuit Court of Cook County, Illinois, captioned *Hartz, et al. v. Zenleads Inc. d/b/a Apollo.io*, 2023 CH 5114 (Ill. Ct.) (the "Illinois Action"), and was brought pursuant to the Illinois Right of Publicity Act ("IRPA") on behalf of an Illinois class. The second lawsuit was filed against Zenleads in this Court, captioned *James Bellanca v. Zenleads Inc. d/b/a Apollo.io,* No. 1:23-cv-01094 (N.D. Ohio) (the "Ohio Action"), alleging violations under ORPS and common law on behalf of an Ohio class.

After the service of the original complaints, the Parties in the Illinois and Ohio Actions began exploring the possibility of settlement in both cases. The Parties entered into a tolling agreement and Bellanca dismissed his action without prejudice for the purposes of allowing the Parties to discuss the possibility of a global settlement accounting for both the Illinois and Ohio Actions. To facilitate their discussions, the Parties agreed to mediate the case and engage the services of the  Honorable Sidney Schenkier (Ret.) of JAMS, a former United States Magistrate Judge for the Northern District of Illinois and an experienced and neutral mediator at JAMS who has mediated several of the right of publicity class settlements.

As part of this process, and to competently assess their respective negotiating positions, the Parties exchanged informal discovery, including on issues such as the size and scope of the putative class, and certain facts related to the strength of Defendant's anticipated defenses. Given that the information exchanged was similar to that which would have been provided in formal discovery related to the issues of class certification and summary judgment, the Parties had sufficient information to assess the strengths and weaknesses of the claims and defenses.

3

The Parties in the Illinois and Ohio Actions participated in a formal mediation before Judge Shenkier, which eventually culminated in a global settlement that would resolve both cases. Pursuant to that settlement, Zenleads agreed to pay $1,874,775.00 into two non-reversionary settlement funds (one for an Illinois settlement class, and another for an Ohio settlement class), to be distributed to settlement class members in each state.  To conform the pleadings to the settlement, on October 3, 2023, Class Counsel filed an Amended Complaint with the consent of Zenleads,  which substituted plaintiff Ira Holtzman as the putative class representative for a putative Illinois Class; added counts for the violations of the Ohio Right of Publicity law, Ohio Revised Code § 2741.01 *et. seq.* and Ohio common law; and added Matthew Wilhelm as the putative class representative of a putative Ohio Settlement Class

On or around November 20, 2023, Plaintiffs Ira Holzman and Matthew Wilhelm moved for preliminary approval of a class action settlement that would have resolved the class claims asserted by two settlement classes asserting claims under Illinois and Ohio law. At hearing, the presiding court questioned whether it could assert jurisdiction over the Ohio-based claims asserted by Wilhelm on behalf of the proposed Ohio settlement class. After additional briefing and additional hearings, the court held that it did not have jurisdiction over the Ohio Settlement Class and Ohio claims and, in turn, (i) denied without prejudice the motion for preliminary approval of with respect to the Ohio Settlement Class and claims, and (ii) dismissed Wilhelm's claims without prejudice to permit the filing of the Wilhelm claims in this Court.

Following dismissal of the Ohio claims, Holzman and Zenleads moved for preliminary approval of the Illinois Class Settlement under the same terms previously presented to the Illinois court. The Illinois court granted preliminary approval of the Illinois Class Settlement on March 13, 2024. Based on the Illinois court's jurisdictional ruling and dismissal, Plaintiff Wilhelm filed this new action in this Court against Defendant Zenleads asserting same claims under Ohio law.

The Parties then entered a Settlement Agreement to resolve claims asserted by Plaintiff Wilhelm and the Ohio Settlement Class, which this Court has preliminarily approved.  (Doc. 16). The Ohio Settlement Class is defined as follows:

> All individuals with a primary Ohio residential address and whose profile on Zenleads was, according to Zenlead's records, added to a free user's Zenleads account within 15 minutes of a subscription purchase between October 14, 2021, and October 3, 2023.

*See* Settlement Agreement §1.13.

The Settlement requires Zenleads to create a non-reversionary Ohio Settlement Fund of $1,004,115.00, from which each Settlement Class Member will receive a *pro rata* portion after payment of Settlement Administration Expenses, the Fee Award, Class Counsel's Expense, and any Incentive Award approved by the Court. *See id.* at § 2.1(a).  Additionally, any unclaimed money from the Settlement Fund will be redistributed to the claiming Class members if the amount exceeds $10.00 per class member.  If less than $10.00, it will be distributed *cy pres* to non-profits approved by the Court. *Id.* at § 2.1(e).  Thus, a claiming Settlement Class Member stands to receive a net recovery between $320 and $641. This is an outstanding result because the Settlement occurred very early in the litigation, avoiding years of delay in payment and the risks of litigating to a final judgment, it provides significant cash relief in line with (if not superior to) the recoveries secured in analogous privacy class settlements, and provides prospective injunctive relief.

## III.    ARGUMENT

### A.    The Court Should Award Fees Based on a Percentage of the Common Fund.

"When awarding attorneys' fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). "Absent adequate compensation, counsel will not be willing to undertake the risk of common fund class action

litigation." *Clark v. Miller Valentine Partners Ltd., II*, 2023 WL 5087233, at *7 (S.D. Ohio Aug. 8, 2023). An award of attorneys' fees must be reasonable, meaning it must be "one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys." *Andrews v. State Auto Mutual Ins. Co.*, 2023 WL 7018839, at *6 (S.D. Ohio Oct. 25, 2023) (citation omitted).

There are two methods for determining whether a fee is reasonable: percentage of the fund method, and the lodestar method. *Austin v. Mayflower Moving Grp., LLC*, 2021 WL 3847793, at *4 (S.D. Ohio Aug. 8, 2021) (citing *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2012)); *Andrews*, 2023 WL 7018839, at *6 (same). The Sixth Circuit has approved both methods. *Rawlings*, 9 F.3d at 515-16. When using the percentage of the fund method, courts in the Sixth Circuit generally approve awards that are one-third of the total settlement. *Austin*, 2021 WL 3847793, at *4. The lodestar method considers the number of hours spent by counsel, multiplied by reasonable attorney rates. *Id.*; *Andrews*, 2023 WL 7018839, at *6 (same). Although not mandatory, courts frequently cross-check a request for a percentage of the fund award against the lodestar. *Andrews*, 2023 WL 7018839, at *6 (citation omitted).

Class Counsel requests that the Court use the percentage of the fund approach to determine the fee in this case. As stated, the Settlement Fund is $1,004,115.00. Class Counsel requests that it be awarded thirty-five percent (35%) of that fund, or $351,671.25. Class Counsel has also provided a lodestar cross-check, which exceeds the amount requested. As discussed below, Class Counsel submits that the requested fee is reasonable under the circumstances of this case.

**B.      Class Counsel's Percentage of the Fund Fee Request is Reasonable.**

The Sixth Circuit has adopted the following factors (often referred to as the *Ramey* factors) to consider when determining what constitutes a reasonable fee: 1) the value of the benefit rendered to the plaintiff class; 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; 3) whether the services were undertaken on a contingent fee

6

basis; 4) the value of the services on an hourly basis (the lodestar cross-check); 5) the complexity of the litigation; and, 6) the professional skill and standing of counsel involved on both sides. *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *6 (S.D. Ohio July 11, 2014) (citing *Ramey v. Cincinnati Enquirer, Inc*., 508 F.2d 1188, 1196 (6th Cir. 1974)).

### 1. The Value of the Benefit Rendered to the Class

When applying a percentage of the fund/benefit analysis, the Court determines Class Counsel's fee requests as a percentage of the total value of the Settlement benefits made available. As stated, that amount is $351,671.25, which is easily within the acceptable range of percentage of the fund fee amounts. *See, e.g., In re Broadwing Inc. ERISA Litig*., 252 F.R.D. 369, 380 (S.D. Ohio 2006) (acknowledging reasonableness of fees ranging from 20 to 50 percent); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 910 (S.D. Ohio 2001) (same); *In re Cincinnati Gas & Elec. Co. Sec. Litig*., 643 F. Supp. 148, 150 (S.D. Ohio 1986) ("typically the percentages range from 20% - 50%); *Andrews*, 2023 WL 7018839, at *6 ("When using the percentage of the fund method, courts in this Circuit generally approve of awards that are one-third of the total settlement"); *see also Butler and Scholz-Pinger v. Whitepages,* 1:19-cv-04871 (N.D. Ill. Sept. 28, 2022) (J. Feinerman) (approving attorneys' fees of 35% from Ohio (ORPS) and from Illinois (IRPA) settlement funds); *Krause v RocketReach,* 1:21-cv-01938 (N.D. Ill. Sept. 12, 2023) (J. Jenkins) (approving 35% attorneys' from IRPA settlement fund).

First and foremost, the benefit rendered to the Class is significant. As explained in plaintiff's motion for preliminary approval, the Settlement's per-person relief excels compared to other statutory privacy cases, as it creates a $1,004,115.00 fund for 9,563 Ohio residents. This amount will be split equally – with no reversion to Zenleads – among claiming Ohio Settlement Class Members. (*See* Agreement §§ 1.16, 2.1(a).) After fees and expenses are paid, and assuming a claims rate of 10-20%, each claiming Ohio Settlement Class member will receive approximately $320 to

$641 each. In comparison to privacy claims under similar statutes that settled for pennies on the dollar or no monetary relief at all, this is an exceptional result. *See, e.g.*, *In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 740 (9th Cir. 2017), *vacated on other grounds by Frank v. Gaos*, 139 S. Ct. 1041 (2019) (approving 25% award of attorneys' fees on *cy pres*-only fund with not a penny to class members); *In re Google LLC Street View Elec. Commc'ns Litig.*, 611 F. Supp. 3d 872, 890 (N.D. Cal. 2020) (approving, over objections of class members and state attorney general, a settlement providing only *cy pres* relief for violations of the Electronic Communications Privacy Act); *Adkins v. Facebook, Inc.*, No. 18-cv-05982-WHA, Dkts. 350, 369 (N.D. Cal. May 6, 2021, and July 13, 2021) (approving settlement for injunctive relief only, in class action arising out of Facebook data breach, and granting $6.5 million in attorneys' fees and costs).

The Settlement is also in line with if not exceeding claimant amounts when compared to the two prior IRPA settlements and other right of publicity or privacy statute settlements that provided cash payments to class members. In fact, the Settlement, for the most part, raises the bar. *See, Butler and Scholz-Pinger v. Whitepages,* 1:19-cv-04871 (N.D. Ill. Sept. 28, 2022) (J. Feinerman) (assuming a final claims rate of 30% for Ohio and 35% for Illinois, each claimant would receive approximately $200 (Ohio), and $65 (Illinois); and *Krause v RocketReach,* 1:21-cv-01938 (N.D. Ill. Sept. 12, 2023) (J. Jenkins) (assuming a final claims rate of 10-20%, each claimant would receive approximately $184-$368); *Fischer v. Instant Checkmate*, 1:19-cv-04892, dkt. 286 (N.D. Ill. Feb. 16, 2024) (final approval for settlement valued at $112.50 for each Ohio class member); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 944 (N.D. Cal. 2013) (approving settlement under California's right of publicity statute that resulted in $15 payments to claimants, representing 2% of possible statutory damages); *Perkins, et al v. LinkedIn Corp.*, No. 5:13-cv-04303, Dkt. 134 (N.D. Cal. Feb. 16, 2016) (approving $13 million settlement under California's right of publicity statute for approximately 20.8 million class members).

Here, a very early settlement was reached. Class Counsel's experience, reputation, and proven consumer class action results were instrumental in reaching this prompt settlement, avoiding years of protracted litigation. In short**,** the thirty-five percent (35%) attorneys' fee award proposed is reasonable based on the right of privacy cases mentioned above, and in light of the results achieved. Aside from the monetary relief, the non-monetary benefits created by the Settlement further support a 35% fee award. Zenleads has agreed to stop the very conduct that gave rise to Plaintiff's claims, *i.e.*, its use of Ohio Settlement Class Members' names in "free previews" that solicit purchases of its subscription services. *See* Settlement Agreement §2.2.  Class Counsel's pursuit of this case unequivocally achieved the goals of ORPS—the protection of an individual's right of publicity. This non-monetary result may be properly considered when determining fees. *See Hall v. Cole*, 412 U.S. 1, 5 n.7 (1973).

### 2.    The Requested Fees Provide Adequate Incentive to Undertake this Representation for the Benefit of Others.

Awarding Class Counsel the requested fees provide an incentive for qualified and experienced attorneys to undertake this type of speculative and risky litigation. Class Counsel's "expenditure of time and money benefitted small claimants who lack the resources to prosecute a case of this nature." *Hainey v. Parrott*, 2007 WL 3308027, at \*3 (S.D. Ohio Nov. 6, 2007). Without Class Counsel's willingness to take the risk and prosecute this cause of action, Plaintiff and the Class would have had no recourse to protect their rights under ORPS since the costs to pursue their individual claims would far exceed their (far from certain) damages. *See Myers v. Mem'l Health Sys. Marietta Mem'l Hosp.*, 2022 WL 4079559, at \*6 (S.D. Ohio Sept. 6, 2022) ("Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own"); *see also Karpik v. Huntington Bancshares Inc.*, 2021 WL 757123, at \*8 (S.D. Ohio) (Feb. 182021) (Without a class action, the individual plaintiffs would not have had a

9

strong incentive to pursue recovery because any monetary award would have been severely outweighed by the costs to litigate their cases"). This factor supports awarding the fees requested.

### 3. Class Counsel Took this Case on a Contingency Fee Basis.

The third *Ramey* factor "stands as a proxy for the risk that attorneys will not recover compensation for the work they put into a case." *In re Cardinal Health Inc. Securities Litig.*, 528 F. Supp. 2d 752, 766 (S.D. Ohio 2007). "Several courts consider the risk of non-recovery the most important factor in the fee determination." *Id.* (citations omitted); *see also Whitlock v. FSL Mgmt.*, LLC, 2015 WL 9413142, at *9 (W.D. Ky. Dec. 22, 2015) ("Contingency fee arrangements indicate there is a certain degree of risk in obtaining a recovery") (*quoting In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001)); *see also Andrews*, 2023 WL 7018839, at *7 (taking case entirely on contingency-fee basis weighs in favor of awarding the fees sought based on risk of not being compensated) (citing *O'Bryant v. Pillars Protection Servs., LLC*, 2020 WL 748 6712, at *6 (S.D. Ohio Dec. 17, 2020) (quoting *Kritzer v. Safelite Solutions, LLC,* 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012)).

Class Counsel undertook this litigation on a contingent basis, and at substantial risk, based on whether there is Article III standing (and without the class even knowing their personal information was shared), whether a class was ascertainable based upon Defendant's records of whose profiles were seen by each person who purchased a subscription after a trial period, and whether a court would reduce a damage award under due process principles as being excessive. (Exhibit A, Wanca Decl. ¶ 6) Although these risks are inherent in any contingent-fee litigation, class actions especially, there are particularly acute risks in this case due to the "newness" of right-of-publicity case law in Ohio and elsewhere.  Class Counsel advanced all the costs in litigating this case while (to date) receiving no compensation for the work they have performed since this, and the Illinois Action, were filed. Had there been no recovery, Class Counsel would not have

been paid a fee or reimbursement for their expenses.

Further, as discussed *infra*, succeeding on the merits of this cause of action was far from certain. Therefore, this factor also weighs in support of Class Counsel's fee request.

### 4. The Value of the Services Supports the Requested Fee (the Lodestar Cross-Check).

As stated, while courts often cross-check the requested fees under the lodestar method, *see Love v. Gannett Co. Inc.*, 2021 WL 4352800, at *6 (W.D. Ky. Sept. 24, 2001) (citing *Whitlock*, 2015 WL 9413142, at *9), such a cross-check is not required, *id.*; *Andrews*, 2023 WL 7018838, at *6 (same). The lodestar figure represents the number of hours spent multiplied by reasonable rates. *Andrews*, 2023 WL 7018839, at *6 (citation omitted). In contrast to employing the lodestar method in full, when using a lodestar cross-check, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *In re Cardinal Health Sec. Litig.*, 528 F. Supp. 2d at 767 (citation omitted).

As set forth above, the instant case has had a disjointed procedural history. *See supra* at 3-6. In short, the Ohio Action and Illinois Action were filed separately, and, after the formal mediation before Judge Shenkier, culminated in a global settlement that would have resolved both cases in Illinois. However, after the Illinois court concluded it did not have jurisdiction over either Wilhelm or the Settlement Class, the instant action was filed in this Court against the same Defendant asserting the same claims under Ohio law, resulting (again) in a Settlement Agreement.

In sum, much of the effort extended in the Illinois and Ohio Actions up to the Illinois court's dismissal of the Ohio Action without prejudice contributed to the Settlement Agreement here. That effort is included in the lodestar calculation, as follows: Class Counsel worked 607.1 billable hours at an average billing rate of $664.26.  Thus, their lodestar is 607.1 x 664.26, or $403,270.00, *see* Wanca Decl. ¶ 7, which exceeds the 35% fee plus expenses requested in this

11

case. The resulting negative multiplier suggests that Plaintiff's requested fees are reasonable. *See Kimber Baldwin Design, LLC v. Silv Communications, Inc.*, 2017 WL 5247538, at \*6 (S.D. Ohio Nov. 13, 2017); *Rikos v. Procter & Gamble Co.*, 2018 WL 2009681, at \*10 (S.D. Ohio (Apr. 30, 2018); *Sprague v. Universal Trans. Sys.*, 2022 WL 3444981, at \*1 (S.D. Ohio June 22, 2022). In sum, Class Counsel's fee request is reasonable based on a percentage of the benefit analysis, and the discretionary lodestar cross-check.

### 5. The Complexity of the Litigation Supports the Requested Fees.

The fifth *Ramey* factor requires the Court to consider the complexity of the case. Here, Class Counsel hired and paid up front a third-party consultant to analyze Defendant's website, research the profiles therein, and engage in marketing and vetting class representatives on two separate occasions for the Ohio Action. Moreover, while courts have denied motions to dismiss claims brought under OPRS and common law misappropriation, *see, e.g., Wilson v. Ancestry.com LLC*, 2023 WL 1112265, at \*8-11 (S.D. Ohio Jan 31, 2023); *Kolebuck-Utz v. Whitepages Inc.*, 2012 WL 1575219, at \*2 (W.D. Wash. Apr. 22, 2021); *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 891-92 (N.D. Cal. 2022); *Green v. Datanyze*, 2024 WL 168123 (N.D. Ill. Jan. 16, 2024); that is not a certainty, *see Charisma Hudson v. Datanyze, LLC*, 2023 WL 8004715 (N.D. Ohio Nov. 17, 2023) (defendant's motion to dismiss granted) (case currently pending on appeal), nor is certifying a class or prevailing on the merits.

In fact, prior to the filings in the Illinois and Ohio Actions, many right of publicity cases in Illinois did not survive the pleading stage, *see Dobrowolski v. Intelius, Inc.*, 2017 WL 3720170, at \*1 (N.D. Ill. Aug. 29, 2017) (people search defendant's motion to dismiss granted); *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1389 (N.D. Ill. 2016) (defendant's motion to dismiss granted); *Daniels v. Fanduel, Inc.*, 909 F.3d 876, 878 (7th Cir. 2018) (same); *Gabiola v. Sarid*, No. 16-CV-02076, 2017 WL 4264000, at \*7 (N.D. Ill. Sept. 26, 2017) (defendant's motion to dismiss granted

12

under both Illinois and Florida's right of publicity statutes), or resulted in denial of class certification, *see Dancel v. Groupon, Inc.*, No. 18 C 2027, 2019 WL 1013562, at \*4 (N.D. Ill. Mar. 4, 2019), *aff'd*, 949 F.3d 999 (7th Cir. 2019).

Other risks were set forth *supra* at 10. Although these risks are inherent in any contingent-fee litigation, class actions especially, there are particularly acute risks in this case due to the "newness" of right-of-publicity case law in Ohio and elsewhere. Despite this legal landscape, Class Counsel forged ahead and invested their time and over $30,000.00 in consultant fees to take on this risk and secured an early class-wide settlement only benefits the Settlement Class here. In a typical client contingency fee negotiation, it would be apparent to the client that a 35% contingent fee would be appropriate considering the significant risk Class Counsel took on in litigating a case mired in unsettled issues (Wanca Decl. ¶ 6). Notwithstanding that circumstance, Class Counsel accepted this case; it is appropriate to award 35% of the fund in attorneys' fees.

### 6. The Skill of Class Counsel Supports the Requested Fees.

The last *Ramey* factor addresses the professional skill of Counsel. Both Class Counsel and Defense Counsel have extensive experience in handling class actions. (Wanca Decl. ¶¶ 8, 12). That experience was and is evident in the Settlements reached globally in the Illinois and Ohio Actions, and then separately in Illinois and in this Court.

### C. The Expenses Incurred Are Reasonable and Should Be Approved.

"Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel, and other related expenses." *In re Cardizem CD Antitrust Litig*., 218 F.R.D. 508, 535 (E.D. Mich. 2003); *Plagens v. Deckard*, 2024 WL 2080662, at \*10 (N.D. Ohio May 9, 2024) (same); *Stephens v. ADS Alliance Data Sys., Inc*., 2024 WL 958331, at \*8

(S.D. Ohio Mar. 5, 2024) (same). Costs incurred for the purpose of providing notice to class members are also reimbursable. *Plagens*, 2024 WL 2080662, at \*11 (citations omitted).

Plaintiff's counsel also incurred $35,070.15 in out-of-pocket, non-contingent litigation expenses. (*See* Ex. A, Wanca Decl. at ¶ ¶ 4, 5 (itemizing expenses). Among them were expenses incurred from a non-affiliated third-party consultant that analyzed Defendant's website, investigated where the profiles came from, and engaged in social media campaigns to locate and vet two rounds of potential class plaintiffs. Plaintiff submits that but for the consultant, this case would not have been brought and the Class would not have received the benefits of the litigation discussed above. (Wanca Decl. ¶ 5). Finally, because the requested expenses are common and reasonable, they should be approved.

**D.      The Proposed Class Representative Incentive Payment Should Be Approved.**

The Settlement provides that Plaintiff will petition the Court for an Incentive Award. As such, Settlement Class Members were given notice that Plaintiff would request $7,500.00 for his service to the class. *See,* Web Notice at p. 4, § 10. Plaintiff respectfully requests that the Court approve this award. Such awards are appropriate to reward class representatives who have pursued claims on behalf of the class. *Moulton v. U. S. Steel Corp.,* 581 F.3d 344, 351-52 (6th Cir. 2009). Courts routinely award such "incentive payments" to the persons who assume the special litigation burden of class representative and thereby benefit the entire class. *See Swigart*, 2014 WL 3447947, at \*7 (approving service payments of $10,000 each to two class representatives); *Clark v. Pizza Baker, Inc*., 2022 WL 16554651, \*8 (S.D. Ohio Oct. 31, 2022) (approving $5,000 service award); *Hunter v. Booz Allen Hamilton, Inc*., 2023 WL 3204684, at \*10 (S.D. Ohio May 2, 2023) (approving service payments of $10,000 each to two class representatives); *Jackson v. Nationwide Retirement Sols., Inc*., 2024 WL 958726, at \*7 (S.D. Ohio Mar. 5, 2024) (approving $5,000 each to two class representatives).

Class action suits conserve judicial and litigant resources. *GMAC Mtge. Corp. v. Stapleton*, 236 Ill. App. 3d 486, 497 (1st Dist. 1992) (citation omitted). Class representatives assume the burdens of litigation that absent class members do not shoulder and do so without promise of a reward and with the risk that the litigation may not succeed. The Class Representative in this case was no exception. Plaintiff's role in this litigation was crucial. Though no award of any sort was promised to Plaintiff when approached to represent the putative Ohio Class, he nevertheless sacrificed his time to prosecute this case on behalf of the thousands of individuals who are members of the Ohio Settlement Class. (Wanca Decl. at ¶ 9).

Plaintiff volunteered to be the Ohio class representative after a week-long social media search.  Plaintiff's name is linked to this case on at least six (6) websites.  These links will remain in place on the internet well after this settlement is finalized. Plaintiff participated in the initial investigation of his claims, provided information to Class Counsel to aid in preparing pleadings filed on behalf of the Class, and reviewed the pleadings prior to filing. *Id.* at ¶ 10. In addition, Plaintiff regularly consulted with Class Counsel, stayed abreast of the proceedings during settlement before this Court, and reviewed and approved the Settlement that led to the resolution of this case. *Id*. Because the substantial benefits Settlement Class Members stand to receive under the Settlement would not exist without Plaintiff's contributions and efforts, Class Counsel submits the requested Incentive Award is reasonable and appropriate.  The request is equivalent to less than $.79 cents for each Ohio Settlement Class member. *Id.* at ¶ 11.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court enter an Order approving the proposed attorneys' fee award in the amount of $351,440.25, litigation expenses of $35,070.15, Notice and Administrative Expenses in an amount not to exceed $20,675.00, and $7,500.00 for the Incentive Award.

Dated: August 16, 2024               Respectfully submitted,

*/s/ Brian J. Wanca*
*One of Plaintiff's Attorneys*

Brian J. Wanca
Wallace C. Solberg
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
bwanca@andersonwanca.com
wsolberg@andersonwanca.com
*Attorneys for the Plaintiff and the Settlement Class*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 16, 2024, the foregoing document, along with all attached exhibits, was electronically filed with the Clerk of the Court using the court's electronic filing system which will send notification of such filing to all counsel of record and a copy of this motion and supporting memorandum will be posted on the settlement website.

*s/Brian J. Wanca*
Brian J. Wanca